# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Legacy Development SC Group, LLC,<br><br>                                      Debtor.<br><br>Michelle L. Vieira, Trustee,<br><br>                                      Plaintiff,<br><br>v.<br><br>Heritage Funding, LLC and Ronald F. LeGrand,<br><br>                                      Defendants. | Bankruptcy No. 12-06435-dd<br><br>Adv. Pro. No. 14-80003-dd<br><br>Chapter 7<br><br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANTS** |

This matter is before the Court on a motion to disqualify counsel for the defendants, Heritage Funding, LLC and Ronald F. LeGrand ("Defendants"), filed by the plaintiff, Michelle L. Vieira, Trustee ("Plaintiff"), on July 25, 2014. Defendants objected to the motion, and this Court held a hearing on the motion on August 26, 2014. After careful consideration of the applicable law, arguments of counsel, and evidence submitted, Plaintiff's motion to disqualify is denied.

## FACTS

Plaintiff filed this adversary proceeding on January 9, 2014. In the amended complaint filed on April 24, 2014, Plaintiff asserts numerous causes of action, including causes of action for equitable subordination and for setting aside a fraudulent conveyance. Plaintiff alleges Heritage Funding, LLC ("Heritage") transferred $2,000,000 to the debtor in the involuntary chapter 7 bankruptcy underlying this adversary proceeding, Legacy Development SC Group,

1

LLC ("Legacy"). The transfer was memorialized by a note and mortgage on ten lots Legacy owned. Shortly thereafter, Legacy transferred $997,566.22 to LeGrand, who is the managing member of Heritage and Legacy. Heritage filed a proof of claim in Legacy's bankruptcy in the amount of $3,100,277.78. In support of its equitable subordination cause of action in which Plaintiff seeks to subordinate Heritage's claim, Plaintiff alleges:

> Heritage, through its Manager LeGrand, has engaged in gross and egregious conduct in that, *inter alia*:
> a. The Heritage "loan" was merely a vehicle to transfer funds for the direct benefit of Heritage's Manager, LeGrand;
> b. Heritage and LeGrand caused the Debtor's property to be encumbered by a Mortgage when the funding did not benefit the Debtor;
> c. Heritage and LeGrand transferred funds to Legacy under the guise of a loan for the purchase of real property, when it knew or should have known that the funds would not be used for the purchase of real property;
> d. Heritage and LeGrand knew or should have known that its funds would not be used for the benefit of the Debtor, and instead were primarily for the direct benefit of Heritage's own Manager;
> e. Heritage and LeGrand caused the Debtor to execute Loan Documents under terms that Heritage failed to enforce, and never intended to enforce, in order to boost itself into a secured position to the detriment of the other creditors and to protect the equity in the real property for itself.

With respect to her fraudulent conveyance cause of action, Plaintiff alleges the transfer to LeGrand of the $997,566.22 constituted a fraudulent transfer without valuable consideration under South Carolina's Statute of Elizabeth. The same attorney is representing both defendants in this adversary proceeding.

## **LEGAL STANDARD**

"A motion to disqualify counsel is a matter subject to the court's general supervisory authority to ensure fairness to all who bring their case to the judiciary for resolution." *Clinton*

2

*Mills, Inc. v. Alexander & Alexander, Inc.*, 687 F. Supp. 226, 228 (D.S.C. 1988). Although a disqualification determination must be based upon "a proper application of applicable ethical principles," the "drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel . . . and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145-46 (4th Cir. 1992). Because of the balance that must be struck "'between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community,'" disqualification motions should be decided on a "case-by-case analysis." *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 304 (D. Md. 1995) (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)). Moreover, "[s]ince disqualification is such a drastic measure, [the party seeking disqualification] 'bears a high standard of proof to show that disqualification is warranted.'" *Id.* (quoting *Tessier*, 731 F. Supp. at 729); *see also Sanford v. Commonwealth of Va.*, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009).

To support disqualifying counsel based on conflict of interest grounds, "the asserted conflict must be a real one and not a hypothetical one or a fanciful one." *Sanford*, 687 F. Supp. 2d at 602. "Put another way, disqualification simply cannot be based on mere speculation that 'a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.'" *Id*. at 603 (quoting *Shaffer*, 966 F.2d at 145). "[S]ome stronger objective indicator—even of 'likelihood'—than simple judicial intuition is needed to warrant the drastic step of disqualification of counsel." *Shaffer*, 966 F.2d at 145-46. The Fourth Circuit is in full accord with the following observations regarding applying the canons of a state's code of professional conduct for attorneys to motions to disqualify:

3

> It behooves this court, therefore, while mindful of the existing Code, to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.

*Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir. 1978).

## **ANALYSIS**

In her motion to disqualify, Plaintiff asserts defense counsel's representation of LeGrand is directly adverse to Heritage because (1) Heritage is a creditor of Legacy and a judgment against LeGrand is beneficial to the bankruptcy estate and its creditors; (2) Legacy may have a defense against the equitable subordination cause of action through distancing itself from LeGrand; and (3) there are numerous crossclaims that Heritage could assert against LeGrand. Rule 1.7 of South Carolina Rules of Professional Conduct deals with conflicts of interest involving current clients:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

S.C. App. Ct. R. 407, Rule 1.7. "[S]imultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (a)(2)" of Rule 1.7. *Id.* at Rule 1.7, cmt. 21. With respect to consent under Rule 1.7(b), Rule 1.13(g) provides that "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders." *Id.* at Rule 1.13(g). Plaintiff asserts Defendants' counsel has not obtained the consent of an official of Heritage other than LeGrand to the dual representation and has not obtained the consent of the shareholders of Heritage.

The Heritage operating agreement provides that there are two classes of members: class A members and class B members. LeGrand is the sole class A member of Heritage and the manager of Heritage. The operating agreement states that "[e]xcept as specifically required in this Operating Agreement or by the provisions of the [Florida Limited Liability Company] Act, Class B Members shall have no right to vote, consent to, or approve of any actions taken or not taken by the Manager of the Company or by the Class A Member(s) and Class A Member(s) shall have the sole right to vote as herein provided." Additionally, the operating agreement sets forth that "[t]he business and affairs of the Company shall be managed by its Manager. Except for situations in which the consent or approval of the Members is expressly required by this Operating Agreement or by nonwaivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incidental to the management of the Company's

5

business."  In her motion to disqualify, aside from asserting in a conclusory manner that the shareholders of Heritage must consent, Plaintiff does not address the impact of these provisions in the operating agreement on Rule 1.13(g) of the South Carolina Rules of Professional Conduct and whether, in light of these provisions, somebody other than LeGrand must still consent to the representation of both defendants by the same attorney.  Nothing has been presented to the Court suggesting that the class B members of Heritage were forced to participate in a limited liability company in which such broad authority is given to one person.  Given the high standard of proof on Plaintiff to show disqualification is appropriate, not addressing this issue constitutes a basis for denying the motion.  *See Buckley*, 908 F. Supp at 304.

A second basis for denying the motion to disqualify lies in Plaintiff's delay in pursuing the motion, as it was filed three days after discovery concluded in this adversary proceeding even though Plaintiff's counsel raised concerns with Defendants' counsel regarding the dual representation early in the case.  Plaintiff asserts she filed this motion after receiving discovery on July 9, 2014, suggesting that LeGrand may not have fully informed the members of Heritage about this litigation.  However, if Plaintiff wanted proof that the members of Heritage or a Heritage official other than LeGrand had consented to the dual representation, she could have demanded such proof from Defendants' counsel early in this adversary proceeding.  While the Fourth Circuit has not ruled on whether delay alone constitutes a valid reason for denying a motion to disqualify, this Court concludes that Plaintiff's delay either by itself or in combination with other factors courts have considered is a basis for denying the motion.  *See Buckley*, 908 F. Supp. at 307-08.  These other factors include "when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and, in particular, whether the motion was delayed for tactical reasons; and whether disqualification

6

would result in prejudice to the nonmoving party." *Id*. at 307 (citation and internal quotation marks omitted). Plaintiff learned of the possible conflict early in this adversary proceeding, she has been represented by counsel throughout this adversary proceeding, and substantial prejudice would potentially result to the defendants because of the significant expense incurred and resources expended thus far pursuing a joint defense strategy. While it does not appear to the Court that the motion was filed for tactical reasons, the motion was filed after the conclusion of discovery and shortly after the Court issued an order protecting LeGrand from appearing for a deposition in South Carolina rather than his residence in Florida.

Finally, the facts supporting the fraudulent conveyance cause of action and equitable subordination cause of action are interwoven in that proving LeGrand did not convey a benefit upon Legacy for the nearly $1 million transferred to him supports Plaintiff's theory with respect to her equitable subordination cause of action. Defendants' counsel has indicated he believes it is in the best interests of both defendants to pursue a common defense against both causes of action because defeating one will help defeat the other. In other words, there is a litigation strategy that supports common counsel or close coordination of defenses.[1] While it is conceivable that as yet unknown further developments in this case could possibly result in Defendants' counsel not being able to act in the best interest of both defendants, the Court does not conclude it should interject itself in the decision of Defendants' counsel to undertake the dual representation. Moreover, the class B members of Heritage have the ability to take action to protect themselves if they believe LeGrand is not acting appropriately, and no authority has been

---

[1] In her motion to disqualify, Plaintiff relies on *Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591 (E.D. Va. 2009). However, *Sanford* is distinguishable from the present situation because in *Sanford* there were substantial discrepancies in the parties' testimony and an incompatibility in positions in relation to opposing parties. *Sanford*, 687 F. Supp. 2d at 597. Plaintiff has not alluded to any discrepancies in the testimony of the two defendants in this case or incompatibilities in their positions.

presented indicating that by not asserting crossclaims against LeGrand, Heritage's ability to pursue any such claims that might exist would be barred in another proceeding. *See* Fed. R. Civ. P. 13(g) ("A pleading *may* state as a crossclaim any claim by one party against a coparty . . . ." (emphasis added)). Furthermore, no legal authority has been presented suggesting the outcome of this adversary proceeding would preclude a class B member of Heritage from taking independent legal action. With respect to Plaintiff's concern that the dual representation could affect the validity of any judgment entered in this adversary proceeding, no authority has been presented suggesting that a class B member of Heritage could attack, on behalf of Heritage, a judgment against Heritage.

## CONCLUSION

For the reasons set forth herein, Plaintiff's motion to disqualify is denied.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**09/10/2014**



Entered: 09/11/2014

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

8